[No. 6383.]

## HARDING v. BURRIS.

1. TRUSTS—*Constructive*—*Limitations*—One who purchases property from a trustee who conveys in *contravention of his trust, is a trustee by construction of law, and in no sense the trustee of an express trust. He holds in hostility to all the world, and whoever would assert the fiduciary character of his holding must bring his action within the five year limitation prescribed by Rev. Stat. sec. 4073—(139).

2. NOTICE—*Constructive*—One who purchases an interest in the results of a litigation pending in the supreme court is under duty to keep himself advised of the progress and results thereof. He is chargeable with constructive notice of a decree subsequently rendered in the same cause, after its remand to the inferior court. The rule applied even to a non-resident—(142).

3. MAXIMS—*One alleging Contraries will not be Heard*— Plaintiff claiming to be entitled to an interest in certain properties which had been acquired by the defendants by virtue of a certain decree, will not be heard to allege the invalidity of the decree so far as it is detrimental to his claim—(140).

4. PLEADINGS—*Construction*—In construing a pleading the substance and not the form is to be looked to—(141).

*Error to El Paso District Court.*—HON. W. S. MORRIS, Judge.

Mr. L. WARD BANNISTER and Mr. GUY LEROY STEVICK for plaintiffs in error.

Mr. J. C. HELM, Messrs. CHINN & STRICKLER, and Mr. JOHN R. DIXON for defendants in error.

Mr. JUSTICE HILL delivered the opinion of the court:

The amended complaint in this action is voluminous. It contains about fourteen thousand words. A demurrer was sustained to this amended complaint. The action was dismissed at the cost of the plaintiffs, who have

brought the cause here for review upon error. The contract out of which this contention arose reads as follows: "THIS MEMORANDUM OF AGREEMENT, made this tenth day of September, A. D. 1898, by and between William M. Burris, of the county of El Paso, state of Colorado, party of the first part, and T. A. Harding, of the city of Des Moines, and state of Iowa, party of the second part: WITNESSETH, that, for and in consideration of the sum of three hundred and fifty dollars ($350.00), the receipt of which is hereby acknowledged, paid by the party of the second part to T. M. S. Rhett, attorney, to be expended by said Rhett, in the costs and expenses of prosecuting to final determination in the supreme court, in the state of Colorado, that certain suit, now pending therein, and entitled, 'James Doyle et al. vs. Minnie E. Anderson et al.,' and numbered No. 4563 on the records of the district court of the county of El Paso, state of Colorado. IN CONSIDERATION therefor the said William M. Burris, from each, every and all fruits of said suit, either by compromise or otherwise, whether the same be money, property or stock, agrees that the said T. A. Harding shall receive one-third thereof. And the said William M. Burris transfers, sells and assigns to the said T. A. Harding, one full and undivided third part, parcel and interest in that certain lease and bond on the North Cascade Lode mining claim, granted by J. Arthur Connell, and now standing in the name of S. S. Sindlinger, for the use and benefit of the said William M. Burris: Also one full and undivided third part, parcel and interest in that certain contract by and between the said William M. Burris and Benj. Franklin, about and concerning that certain judgment heretofore obtained by one Franklin against the Little May Gold Mining Company in the county court of the county of El Paso.

Also one full and undivided third part, parcel and interest in, to and of that certain suit and the proceeds thereof, entitled William M. Burris vs. The Little May Gold Mining Company, now pending in the county court of El Paso county, and state of Colorado. And it is further stipulated and agreed that the said T. A. Harding shall not be called upon to pay or contribute any sum of money other than the above mentioned, three hundred and fifty dollars, towards the prosecution of said suit in said supreme court of Colorado. And it is further stipulated and agreed that when and as soon as the parties hereto obtain control, at the stockholders' meeting, of The Little May Gold Mining Company, to be held hereafter, that said sum of three hundred and fifty dollars advanced as aforesaid, shall, by due and proper resolution of the said the board of directors of said company, be secured, by lien, upon the assets of said company in favor of the said T. A. Harding. And each and both of the parties hereto contract with the other, that no compromise, settlement or agreement will be made about or concerning said above mentioned suit, No. 4563; nor about said lease and bond; nor about said Franklin judgment, without the advice and consent of both the parties hereto.

"Executed in duplicate the day and year first above written.

"WITNESS:

"WM. M. BURRIS.
"T. A. HARDING."

It appears from the complaint, that some time after the execution of this contract and the payment of the $350 called for, that the original judgment in the suit referred to in the contract was reversed by this court, in which it sustained the validity of the bonds and leases held by William M. Burris and Henry Brandenburg upon

certain mining claims, holding that the said Burris and
Brandenburg were entitled to specific performance of
such leases, as prayed for in their supplemental cross-
complaint in the original action.—*Burris et al. v. Ander-
son et al., 27* Colo. 506.

The plaintiffs here seek to recover a portion of the
proceeds derived from the sale of some of these claims.
According to the complaint, the judgment of reversal by
this court appears to have been made during the month
of September, 1900. Thereafter, in pursuance of the
mandate of this court and on or about the 18th of Feb-
ruary, 1901, said cause came on again for hearing in the
district court of El Paso county, at which time there was
a judgment and decree entered, which, among other
things, recites:

"Third, That since the rendition of said order and
judgment of reversal, one Mattie B. Burris has succeed-
ed to all the rights and interest of said William M. Bur-
ris and Henry Brandenburg, in and to the matters and
things in controversy in this suit, and in, under and by
virtue of said order, judgment and reversal, and ought to
be substituted as cross-complainant herein in place of the
said cross-complainants aforesaid. *    *    *

"It is therefore considered, ordered, adjudged and
decreed by the court:

"1st, That the said Mattie B. Burris be, and she
hereby is, substituted as defendant and cross-complainant
in this action in the place and stead of said William M.
Burris and Henry Brandenburg."

This decree further provided that, within five days
from that date, certain companies and persons make con-
veyances to Mattie B. Burris of all their right in and to
the property, the fruits of which are here in controversy,
and in and to other properties not involved herein; that

within five days from that date Mattie B. Burris pay and deposit in a bank $60,000 to be distributed to certain persons; that upon such payment or deposit the deeds be delivered to her; that said $60,000 be accepted in full as the purchase price of said properties; that in case she failed or refused to pay said money within the five days as directed, upon satisfactory showing, she would forfeit her claim to said properties, and any interest therein, but that upon the making of said payment and the delivery of said deeds in full satisfaction of such order; said judgment and decree should be entered of record and become final. This decree was entered on February 18, 1901, from which no appeal was taken. This action was begun on March 16th, 1906. The complaint alleges to the further effect that thereafter Mattie B. Burris entered into a written contract with the El Paso Gold Mining and Milling Company, whereby she agreed to convey certain of said properties named in said decree, to-wit, The Little May and Australia lode mining claims, to said company; that the company agreed to pay therefor 400,000 shares of its capital stock; that the said Mattie Burris or William Burris had no money to pay the purchase price called for by the agreements. It is then alleged that, through certain written conveyances, she conveyed the said properties to The El Paso Gold Mining and Milling Company, which agreed to pay therefor 400,000 shares of its capital stock; that this company also found a person who would purchase 250,000 of said 400,000 shares for $100,000, which was done, and out of which the $60,-000 as directed by the decree of the district court was paid; that a large part of the remaining $40,000 was devoted to the clearing up of certain debts and defects in connection with the title of said property, including payment of mechanic liens, etc.; that the balance of said

.$40,000, being the major part thereof, was turned over to William Burris or Mattie B. Burris; that .the remaining 150,000 shares of said stock, in pursuance of said contract, was not delivered to said Mattie B. Burris, but was delivered to the defendant, S. S. Bernard, and held ·in trust to protect and secure said company against certain defects, mechanic liens and judgments against the title of said property, and that the defendant Bernard still holds said 150,000 shares or the major part thereof so .in trust; that William M. Burris died prior to the commencement of this action; that Mattie B. Burris and Allen .Burris, who are entitled to the stock held by said Bernard, are his sole heirs, etc.

The plaintiff Nesting is alleged to be a part owner by purchase in the interest of the plaintiff Harding to the contract aforesaid. The prayer is for judgment .against the defendants for 133,000 shares of said stock, for an accounting, etc., and that Bernard be adjudged to hold the stock in trust for the plaintiffs, etc. The special demurrer raises the question of the statute of limitations, also that the complaint does not state facts sufficient to constitute a cause of action.

It is claimed by the defendants: First, that the contract under which recovery is sought is *malum in se* and no recovery can be had thereon. Second, that as the complaint pleads the judgment in full in the Anderson suit ·in favor of Mattie B. Burris, and since it was therein affirmatively adjudicated, that she had succeeded to all the rights and interests of the original parties plaintiff, and the decree was never appealed from, that the alleged rights of the plaintiffs in the present action, if any they had, were thereby concluded. Third, that the alleged cause of action attempted to be pleaded was barred by the statute of limitations when the action was brought.

If the third position contended for is correct, neither of the others need be considered; nor the further questions raised by the defendants that a proper construction of the contract as a whole, when that clause which provides for the securing of this advancement by The Little May Company is considered, which means that it was intended to have this money paid back, and thereby made of it simply a loan.

Section 4073, Rev. Stats. of 1908, reads as follows:

"Bills of relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within five years after the cause thereof shall accrue, and not after."

It is contended by the plaintiffs that this is the statute of limitation which should apply. The contention of the defendants is, that while the action is barred under this statute, according to the allegations of the complaint it is also barred under general section 4072, Rev. Stats. of 1908, which reads:

"Bills for relief, on the ground of fraud, shall be filed within three years after the discovery by the aggrieved party, of the facts constituting such fraud, and not afterwards."

We find it unnecessary to pass upon the three-year statute. According to the allegations of the complaint, the transfer or assignment of the interest of Burris and Brandenburg to Mrs. Burris, and the decree declaring the assignment valid, and her being the owner, being the frauds complained of, transpired over five years prior to the bringing of this action.

Assuming, without deciding, that the facts in the case of *Farris v. Wirt*, 16 Colo. App., page 1, are applicable, and that this is not a proceeding for relief on the ground of fraud, but is a proceeding to enforce a trust in

which the plaintiffs seek to compel specific performance of the contract between Harding and William Burris (who thereby became the trustee of an express trust), the allegations of the complaint are such that the present defendant Mattie B. Burris became the trustee only of a constructive trust.

A purchaser from a trustee, in contravention of the trust, in no sense becomes thereby an express trustee; he becomes a trustee *in invitum* by construction of law. He is a constructive trustee. He holds actually in his own right and in hostility to the world; but a court of equity, as Judge Story says, will force a trust upon his conscience and compel him to perform it or answer for its fruits.—2 Story's Eq. Jur., 12th Ed., Sec. 1257; 1 Perry on Trusts, 5th Ed., Sec. 172; 2 Pom. Eq. Jur., 2nd Ed., Sec. 1048; *Robinson et al. v. Pierce et al.*, 118 Ala. 273; *Smyth v. Oliver*, 31 Ala. 39.

Such a trust is raised and enforced by a court of equity as a principle of justice. It has attached to it none of the attributes of an express trust. The purchaser is charged for breaking up the trust and not because he has agreed to execute it; but in either event, the remedy of the complainants was all in equity upon bill filed in due season, regardless of which section of the statute of limitations was applicable.

In the case of *M. S. & R. Cole v. Noble*, 63 Texas, at page 434, it is said:

"In case of a constructive trust, which is born of fraud, and which presupposes from its beginning an adverse claim of right on the part of the trustee by implication, the statute will commence to run from the period at which the *cestui que trust* could have indicated his right by action or otherwise."

Cited in support of this statement are other cases of *Hunter v. Hubbard,* 26 Texas 537; *Anderson v. Stewart,* 15 Texas 285; *Carlisle v. Hart,* 27 Texas 350.

But it is contended, as the complaint alleges, that the plaintiff Harding had no actual knowledge of the assignment to Mrs. Burris or of the decree entered in her favor, that the five-year statute did not begin to run until such knowledge was brought home to his attention. This doctrine does not always apply to constructive trusts. But, again assuming that this principle is applicable here, and that upon account of the allegations in the complaint concerning the manner in which Mrs. Burris secured this title, that the statute did not commence to run until the plaintiff Harding had actual or constructive knowledge of such repudiation, we think it can avail him nothing.

The complaint sets forth in full the decree entered by the district court in the Anderson case pursuant to directions from this court. It recognizes the validity of that decree. In fact it is necessary, if the plaintiffs recover at all, to base their right upon the validity of the title secured to the property by virtue of this decree. According to this decree Mattie B. Burris had become the exclusive owner thereof. According to the complaint, she made this claim herself at that time, and caused it to receive the sanctity of a decree of the district court, and we do not think that the complainants can now be allowed to say that this decree is valid in the part under which they seek to recover, and meaningless upon the question of her claim of ownership wherein this portion is detrimental to their contention. In other words, they allege, in substance, that by virtue of this decree, which became final, title was secured in her, yet, notwithstanding this, her adverse claim and holding thereunder were not in good faith, but for the use and benefit of her husband and

thereby meaningless, so far as being an adverse claim was concerned. When the contract is given the construction he contends for, Mr. Harding, to a certain extent, is a privy to the Anderson suit; he was seeking to obtain a one-third interest in its result, in case of a reversal by virtue of a contract, which practically, according to his interpretation, gave him this one-third interest.

In Vol. 1, Herman on Estoppel and Res Judicata, in section 156, it is stated:

"It is not always essential to the creation of an estoppel that the person should be a party to the record. One who instigates and promotes litigation for his own benefit by employing counsel or binding himself for the costs and damages, will be bound by the litigation or procedure as much as the party to the record."

While, ordinarily, it is true that the decree of a court binds only parties and their privies in representation or estate, yet the general rule appears to be that he who purchases during the pendency of a suit is held bound by the decree that may be made against the person from whom he derives title.—1 Story's Eq. Jur., 12 Ed., Sec. 406; 25 Cyc. 1484, 1485; 21 Am. & Eng. Enc. of Law, 596; Bennett on Lis Pendens, Sec. 320. This being the case, the same rule certainly ought to apply when it comes to the question of being charged with constructive notice of the result of the action.

Counsel for plaintiffs urge that Harding did not purchase the legal title of anything involved in the Anderson litigation, but that he thus became interested in the essential use only of the subject of the controversy, which beneficial use they, however, claim was the essential thing. In placing a construction upon a pleading, the substance of its allegations, and not the form, is to be looked at. We think it makes no difference whether the party intruding

into the litigation does so by purchase of the thing that is in controversy, or whether his purchase is that of the interest, the fruits or the result of the controversy. In this case he was to have one-third of anything secured therefrom, and in order to make his interest in it more certain he provided that there should be no settlement made pertaining to it without his consent. Such being the case, as we view it, under these circumstances, it was his duty to have ascertained and had actual notice of the result of this litigation. A party may not be. allowed to turn his back to a condition of affairs which he could have observed, when it was his duty to have done so, and then say I did not see these matters take place and for that reason did not have actual knowledge of their existence. The rule has always been that a party put by the circumstances on inquiry as to a fact, is affected with constructive notice thereof.—*Oliver v. Piatt*, 15 Curtis (U. S.) 479. After the reversal of the Anderson suit, it was the duty of the plaintiff Harding to have known the result of this litigation; he should be held to have had constructive notice of the rendition of this decree in the district court of El Paso county, which disclosed, announced and published the fact to him that if any such a trust relation did exist between him and William Burris or Brandenburg or Mrs. Burris, it was then and there repudiated, and that the title was then being claimed by Mrs. Burris, adverse to him and in open hostility to any claim he might make. This was more than five years prior to the bringing of this action. We do not think the reasons given by Mr. Harding, viz., that he was in Iowa and relied upon Mr. Burris to keep him posted, are sufficient to relieve him from the responsibility of being held to have had constructive notice of the result of this decree, and the adverse claim then being made by Mrs. Burris as

against him and all the world as to her ownership of these properties.

We find nothing in the complaint that would appeal to the conscience of the chancellor to relieve him of his laches and failure to bring his action within the statutory period in a case of this kind, where the other party claiming open and notorious ownership went through all the trials concerning it, was compelled to raise large amounts of money for its relief, and especially so after the lips of the party who had made the contract with him had been sealed by death, thus preventing him from bringing forward his construction of it or his reasons for non-compliance with it. The complainants had the right to file their bill at any time after the commission of the alleged breach of trust; if they were entitled to what they contend for, after the decision of this court, it was their duty to have followed it up and ascertained as to its disposition at least within the period of the statute of limitation. To disallow its defense would be to overrule that great and invaluable principle of equity which has stood for centuries requiring the student to be diligent; further, it would be to abrogate the statute itself.

The judgment is affirmed.                *Affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE GABBERT concur.