## No. C-1789

**Duane L. Lucas v. J. Dudley Abbott, Jr.,
and Sandstone 70 Corporation, a Colorado corporation**

(601 P.2d 1376)

Decided October 29, 1979.

478

Grant, McHendrie, Haines & Crouse, P.C., David A. Bottger, Donald B. Gentry, for petitioner.

Almon and Barsotti, David Barsotti, for respondents.

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

We granted certiorari to review a decision of the Colorado Court of Appeals, which reversed the district court. *Abbott v. Lucas,* _____Colo. App. _____, 615 P.2d 37 (1978). The trial court granted the defendant's motion for summary judgment on the basis that the statute of limitations began to run at the inception of a constructive trust; *i.e.,* with the constructive trustee's receipt of the trust *res* on June 29, 1970.

The court of appeals held that the period of limitations did not commence until the claimant under the constructive trust acquired, or should have acquired, knowledge of the trust. We affirm the court of appeals and remand for further proceedings.

International Investments, Ltd. (International), owned real property which had been purchased with funds borrowed from Duane Lucas (Lucas), who was a director, officer, and shareholder of International. On March 5, 1970, International agreed to convey that property to Lucas in consideration of the cancellation of its debt to him.

On June 22, 1970, International executed a joint venture agreement with J. Dudley Abbott, Jr., and Sandstone 70 Corporation (Abbott). The joint venture was formed for the purpose of development by International of realty owned by Abbott. Under the terms of the agreement, International agreed to pay Abbott one half of the value of his land which was to be developed and to assume one half of the future joint venture expenses. A balance sheet prepared by International for the joint venture specified that International owned the real property (Lucas), that the land was worth $450,000 and that International owed Lucas $137,500.

On June 29, 1970, International executed a deed transferring the real property to Lucas as provided by the March 5 agreement, and the deed was recorded on June 30, 1970. This conveyance reduced the stated net worth of International from $275,000 in the black to $36,000 in the red. Neither the transfer nor its effect on International's net worth was revealed to Abbott.

International failed to perform its duties under the joint venture and was asked to withdraw therefrom in December 1970. On March 10, 1971, International conveyed to Abbott its half interest in the development property and executed a note in the amount of $18,000 to Abbott to settle accounts. It defaulted on the note in December 1971. Abbott sued on the

note and obtained a judgment on October 19, 1972.

On April 28, 1976, Abbott attempted to execute the judgment; the execution was returned unsatisfied. On May 6, 1976, Abbott instituted another action seeking to impose a constructive trust on the property conveyed by International to Lucas. Lucas moved for summary judgment on the basis that the action was barred by the statute of limitations for fraud, section 13-80-109, C.R.S. 1973,[1] and by the statute of limitations for trusts, section 13-80-114, C.R.S. 1973, which states:

"Bills of relief, in case of the existence of a trust not cognizable by the courts of common law and in all other cases not provided for in this article shall be filed within five years after the cause thereof accrues, and not thereafter."

This statute plainly provides that the period of limitations for actions on trusts commences with the accrual of the plaintiff's cause of action. *Patterson v. Fort Lyon Canal Company,* 36 Colo. 175, 84 P. 807 (1906). The issue presented for our determination is: When did Abbott's cause of action accrue under the facts of this case?

■ An action on any trust accrues at such time as the claimant attains, or reasonably could have attained, notice of the trustee's use of the trust property in a manner which is inconsistent with the claimant's interest. Section 13-80-114, C.R.S. 1973; *Vandeweile v. Vandeweile,* 110 Colo. 556, 136 P.2d 523 (1943); *Harding v. Burris,* 52 Colo. 132, 119 P. 1063 (1911). In this respect, there is no distinction between express, resulting, and constructive trusts. *Vandeweile, supra.*

However, there are differences in the times at which claimants under the three types of trusts are held to have actual or constructive notice of the trustee's inconsistent use of the trust *res* and at which their causes of action under the trusts are held to accrue for purposes of the statute of limitations.

■ The trustee of an express or resulting trust has title to the trust *res* in accordance with the terms of the trust, and the point at which the claimant has notice that the trustee has repudiated the trust and is no longer using the *res* for the benefit of the claimant can be determined only on a full review of the facts of the case.

■ The trustee of a constructive trust, however, acquires title to the *res* in a manner which is inconsistent *ab initio* with the equitable interests of the claimant under the trust. The trustee holds title to the

---

[1] Section 13-80-109, C.R.S. 1973, provides: "Bills for relief on the ground of fraud shall be filed within three years after the discovery by the aggrieved party of the facts constituting such fraud, and not afterwards."

Abbott's cause of action based on fraud is clearly precluded by this section because it was not brought within three years of October 19, 1972, the latest date at which the action could have accrued. See *infra* this opinion.

property in his own right and in hostility to all others. The fact situations from which constructive trusts arise vary widely and are often quite complex. The rule which emerges from the cases is that the claimant's cause of action to establish a constructive trust accrues, for purposes of the statute of limitations, when the claimant is aware, or reasonably should be aware, of facts which would make a reasonable person suspicious of the wrongdoing asserted as the basis of the trust. *Harding v. Burris, supra*; *Cliff v. Cliff*, 23 Colo. App. 183, 128 P. 860 (1912). *See also G. Bogert, Trusts and Trustees* § 953 (2d ed. 1962); *Silver v. Silver*, 421 Pa. 533, 219 A.2d 659 (1966); *Dabney v. Philleo*, 38 Cal.2d 60, 237 P.2d 648 (1951).

One of the factors to be considered in determining the point at which such reasonable suspicions arise is the existence *vel non* of a fiduciary relationship between the constructive trustee and the claimant under the constructive trust. In the context of such a relationship, "facts which would ordinarily require investigation may not excite suspicion, and the same degree of diligence is not required." *Hobart v. Hobart Estate Co.*, 26 Cal.2d 412, 440, 159 P.2d 958, 973 (1945); *Davis v. Kahn*, 7 Cal. App.3d 868, 86 Cal. Rptr. 872 (1970). Justified reliance on representations made within the ambit of such a fiduciary relationship lessens the duty of reasonable inquiry imposed on the claimant under the constructive trust as to the facts which underly his claim. *Dabney v. Philleo, supra.*

This court has recognized the fiduciary nature of the relationship which exists between the parties to a joint venture. *Kincaid v. Miller*, 129 Colo. 552, 272 P.2d 276 (1954). That relationship can attach during the negotiations which precede the formal execution of a joint venture agreement. *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951). Pursuant to the relationship, each joint venturer has a duty to make full disclosure to his colleagues concerning matters which have induced them to enter into the relationship. *Taylor v. Jackson*, 267 Ore. 33, 514 P.2d 548 (1973).

It remains to apply the general principles stated above to the facts of the case before us. Between the time of their preliminary negotiations and the point at which the joint venture was dissolved, a fiduciary relationship existed between International and Abbott as joint venturers. The fiduciary nature of the relationship provided at least initial justification for Abbott's reliance on International's balance sheet, as a representation of the corporation's financial stability and as an inducement to enter into the joint venture. Abbott's cause of action to impose a constructive trust accrued at that subsequent time, if any, at which a reasonable person in Abbott's position would have inquired as to International's continued ownership of the property listed in the balance sheet but later transferred to Lucas. Again, the fiduciary nature of the relationship between the parties lessened the duty of inquiry imposed on Abbott.

Only when Abbott's duty of inquiry arose can Abbott be held to have had constructive notice of the transfer of the property, based on the deed recorded on June 30, 1970. In any event, such constructive notice is imputable to Abbott as of October 19, 1972, when Abbott became International's judgment creditor. *Bowman v. May,* 102 Colo. 417, 80 P.2d 327 (1938); *Greco v. Pullara,* 166 Colo. 465, 444 P.2d 383 (1968). However, Abbott's duty of inquiry might have arisen earlier, depending on the course of business dealings between the parties and the factors underlying the failure of the joint venture. If the duty of inquiry arose at any time prior to May 6, 1971, (five years before the institution of the present action), section 13-80-114, C.R.S. 1973, serves as a bar to recovery by Abbott. The determination is one of fact, to be made initially by the trial court.

Therefore, we affirm the judgment of the court of appeals insofar as it stated that Abbott's cause of action accrued when Abbott knew, or should have known, of the transfer to Lucas, and remand the case to the district court for a determination of when Abbott's duty of inquiry actually arose.[2] Only after this determination can the effect of section 13-80-114 on Abbott's cause of action be stated.[3] If the district court determines that Abbott's duty of inquiry arose prior to May 6, 1971, it should enter summary judgment on the basis of section 13-80-114. If, on the other hand, the court determines that the duty of inquiry arose after May 6, 1971, it should deny the motion for summary judgment, grounded on that statute, and consider the other grounds asserted for summary judgment.

Judgment affirmed and cause remanded for proceedings consistent with this opinion.

---

[2] In the proceedings in the district court, Abbott will have the burden of proving that the duty of inquiry arose after May 6, 1971. *Cliff v. Cliff, supra; Smith v. Kent Oil Company,* 128 Colo. 80, 261 P.2d 149 (1953).

[3] We indicate no opinion as to the merits of Abbott's substantive claim that a constructive trust should be imposed on the property transferred to Lucas.