**No. C-1193**

**Bill F. Murray v. Montgomery Ward Life Insurance Company**

(584 P.2d 78)

Decided August 28, 1978.                    Rehearing denied October 10, 1978.

Jenkins & Littlejohn, P.C., Joseph P. Jenkins, for plaintiff-petitioner.

Anderson, Dressel, Sommermeyer & Woodard, William F. Dressel, for defendant-respondent.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

We granted certiorari to review the court of appeals decision in *Murray v. Montgomery Ward Life Ins. Co.,* 38 Colo. App. 498, 563 P.2d 20 (1977). The court of appeals upheld a jury verdict and judgment in favor of the defendant insurance company. We affirm.

The defendant insurance company refused payment on a life insurance claim on the ground that there had been a fraudulent misrepresentation concerning the decedent's health on the application for the policy. On certiorari, we are concerned with the issues of constructive notice as constituting a waiver of the defense of fraud and the trial court's refusal to instruct the jury that a corporation is presumed to have knowledge of what is in its files and records. The plaintiff's main arguments are that the trial court erroneously denied his motion for a directed verdict at the

conclusion of all the evidence and, after the jury verdict, erroneously denied his motion for judgment notwithstanding the verdict.

In October 1972, the plaintiff's wife, Betty Jane Murray, fell from a horse, incurring serious skull and brain injuries. She subsequently underwent a series of surgical operations and medical procedures. After her release from the hospital in January 1973, she continued to receive physical and speech therapy for "aphasia" which resulted from her accident. The primary symptom of this condition was difficulty in controlling her motor reflexes, including her ability to communicate and walk.

In February 1973, plaintiff applied for, and was issued a hospital income insurance policy by defendant insurance company. Both plaintiff and decedent were covered by the policy. The decedent was subsequently hospitalized on several occasions for problems directly linked to her earlier accident. Defendant paid claims to plaintiff arising from these hospitalizations under the terms of the hospital income policy. It was contended that as a result of these claims defendant received information concerning decedent's accident and physical condition.

During the fall of 1973, plaintiff and decedent received in the mail an application for a Montgomery Ward "Easy Life $10,000 Level Term Life Insurance" policy. Application was made for a policy on decedent's life. In response to questions on the application concerning decedent's past and present physical condition, it was stated that the decedent had had X-rays due to a head injury from a fall and that as a result of the treatment, she had "recovered." The policy was issued on January 1, 1974 to the decedent.

Decedent was rehospitalized in January 1974 for surgery required because of her earlier accident. She died on April 19, 1974 as a result of complications from this surgery.

When plaintiff, as beneficiary, filed a claim with defendant insurance company to collect on the life insurance policy, it refused payment, rescinded the policy, and refunded the premium that had been paid. Plaintiff then brought an action in the trial court to collect on the policy. The court jury returned a verdict in favor of the defendant.

I.

Plaintiff contends that defendant failed to establish the legal prerequisites for rescission of an insurance policy as a matter of law. Thus, plaintiff submits that the trial court on his motions should have either directed a verdict for plaintiff or entered a judgment notwithstanding the verdict.

In *Hollinger v. Mutual Benefit Life Insurance Co.,* 192 Colo. 377, 560 P.2d 824 (1977), we set forth the five elements that an insurance company must prove to justify rescinding a life insurance policy on the basis of misrepresentations in the application. They are:

"(1) The applicant made a false statement of fact or concealed a fact in his application for insurance; (2) the applicant knowingly made the false

statement or knowingly concealed the fact; (3) the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed by the insurer; (4) the insurer was ignorant of the false statement of fact or concealment of fact and is not chargeable with knowledge of the fact; (5) the insurer relied, to its detriment, on the false statement of fact or concealment of fact in issuing the policy."

We agree with the court of appeals that the record reveals evidence from which a jury could find that these elements were established. As to the fourth element, the plaintiff contends that, as a matter of law, the defendant insurance company was presumed to have known that the statement was false, because of the information made available to the defendant insurance company when it paid claims on the hospital policy issued to the plaintiff. Thus, the plaintiff argues, since the defendant insurance company had the information regarding the decedent's precarious health, it waived its right to defend on the ground of fraud. We do not agree. The matter of imputation of knowledge and waiver were factual issues for the jury to determine.

## II.

The plaintiff also submits that there could be no finding of misrepresentation on the application because the questions on it were overly broad and discouraged comprehensive answers. We reject this argument.

The very question affirmatively answered was: "Has any family member listed above ever had or been treated for: . . .any other physical disease or deformity or consulted or been examined by any physician for other than a symptom-free check-up, or had electrocardiograms, x-rays, or blood studies during the past 5 years?" Admittedly, this question is broad, and a reasonable person might not interpret it to require a detailed medical answer. It does, however, clearly indicate that to answer the question truthfully and in good faith, an applicant should inform the insurance company of a serious medical problem. This the plaintiff and the decedent applicant failed to do. The plaintiff and the applicant here are "reasonably chargeable with knowledge that the facts omitted or misrepresented were within the scope of questions asked on the application." *Wade v. Olinger Life Insurance Co.,* 192 Colo. 401, 560 P.2d 446, 452 (1977). The issue of misrepresentation was properly before the jury.

## III.

Plaintiff next maintains that the trial court erred in not submitting to the jury his tendered instruction that a corporation is presumed to have knowledge of what is contained within its own records.

Presumptions of this type are, in effect, rules of convenience based on public policy or experience and established to aid the trier of fact in its determination. *Moore v. Skiles,* 130 Colo. 191, 274 P.2d 311 (1954); *American Insurance Company v. Naylor,* 101 Colo. 34, 70 P.2d 349 (1937). Thus, in certain situations, a litigant may establish certain

underlying facts and the law will allow a presumption to arise from those facts. The effect of a presumption is to create a prima facie case, upon which judgment may be rendered in the absense of contrary evidence. *May Stores Shopping Centers, Inc. v. Shoemaker,* 151 Colo. 100, 376 P.2d 679 (1962); *American Insurance Co. v. Naylor, supra.*

■ There is a presumption that a corporation has knowledge of what is in its files and records. *Denver, South Park & Pacific R.R. v. Conway,* 8 Colo. 1, 5 P. 142 (1884). Plaintiff has established that defendant had records of decedent's condition in files related to payments made on the hospital income policy issued by defendant. Plaintiff also has established that he was billed for the premiums for both policies through his Montgomery Ward charge account. The defendant insurance company on the other hand presented evidence that the life and health insurance division of Montgomery Ward are functionally separate and there is no intermingling or cross-indexing of the information contained on the records of each division.

■ The plaintiff was entitled to a proper instruction on this presumption. However, under this record, we do not regard the trial court's refusal to give the plaintiff's tendered instruction as reversible error. Comprehensive evidence of all the facts as to the defendant's possession of information relating to the decedent's precarious health condition was before the jury, which was otherwise fully instructed that the defendant's affirmative defense of fraud or deceit is not valid if waiver is established. The matter of waiver and the issue of whether the defendant had constructive notice of the decedent's condition when it issued the policy was treated in detail by counsel in final arguments to the jury. As this case is postured for appellate review, we rule that the trial court's error in refusing to instruct the jury on the presumtion is not reversible error.

The judgment of the court of appeals is affirmed.

MR. JUSTICE CARRIGAN concurs in the result only.

MR. JUSTICE KELLEY does not participate.